UNITED STATES COURT OF APPEALS
**Filed 6/25/96**
FOR THE TENTH CIRCUIT

PAT A. RHYMES,

  Plaintiff-Appellant,

v.

ST. JOSEPH REGIONAL MEDICAL
CENTER OF NORTHERN
OKLAHOMA, INC.,

  Defendant-Appellee.

No.  95-6230
(D.C. No. CIV-94-505-A)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before ANDERSON, LOGAN, and MURPHY, Circuit Judges.

   After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.

---

[*]  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

See Fed. R. App. P. 34 (f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Pat A. Rhymes appeals from the district court's order granting summary judgment to defendant St. Joseph Regional Medical Center on her complaint for wrongful termination of employment. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

Plaintiff went to work for defendant in 1976, and over the next seventeen years she worked in numerous positions throughout the hospital facility. In 1987, plaintiff filed a worker's compensation claim for a back injury; she was eventually awarded a 50% disability rating.

Plaintiff was secretary of defendant's Human Resources Department when, in early 1993, defendant discovered that it was headed for financial problems due to declining patient census and restructuring in the hospital industry. Beginning in February 1993, defendant instituted cost-cutting measures designed to reduce its operating losses but experienced significant operating losses in May, June and July 1993. Defendant then stepped up its cost-cutting measures, seeking to reduce staffing by the equivalent of approximately thirty to thirty-five full time positions. Defendant asserts that it instituted a reduction in force (RIF) to achieve these reductions.

Plaintiff's supervisor informed her in April 1993 that her hours would be reduced by half effective October 1, 1993. Plaintiff responded by filing a charge of discrimination with the EEOC on April 26, 1993. Defendant terminated plaintiff's employment on June 22,

2

1993. Plaintiff brought this action, alleging that her termination violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (ADEA), the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (ADA), and Oklahoma public policy, and that she was terminated in retaliation for filing the charge of discrimination with the EEOC and for filing a worker's compensation claim.

"We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court under Fed. R. Civ. P. 56(c)." Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir. 1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

We apply the analytical framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), to plaintiff's ADEA, retaliation, and ADA claims. See Marx v. Schnuck Markets, Inc., 76 F.3d 324, 327-328 (10th Cir. 1996) (plaintiff may assert multiple civil rights claims and prove a prima facie case as to each), petition for cert. filed, 64 U.S.L.W. 3780, (U.S. May 7, 1996) (No. 95-1822). Under this analysis, plaintiff has the initial responsibility of presenting a prima facie case of discrimination or retaliation. "Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a facially nondiscriminatory reason for the adverse employment decision." Id. at 327. To survive summary judgment, plaintiff must then show that there is a genuine dispute of

material fact concerning whether the employer's asserted reason is pretextual; that is, unworthy of belief. Id.

The district court found that plaintiff failed to establish a prima facie case of age discrimination. A prima facie case of age discrimination generally requires proof that plaintiff was: (1) within the protected age group; (2) doing satisfactory work; (3) discharged despite the adequacy of this work; and (4) replaced by a younger person. Id. An employee who has lost her job due to a RIF need not show that she was replaced, however; instead, she can "produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision." Ingels, 42 F.3d at 621 (further quotation omitted).

Plaintiff claims she was replaced by a younger employee. Defendant disputes this, contending that it merely shifted plaintiff's duties to an existing employee. See, e.g., Collier v. Budd Co., 66 F.3d 886, 890 n.5 (7th Cir. 1995). We need not decide whether plaintiff was replaced, because even if she was not, she presented evidence that she was treated "less favorably than younger employees" during the RIF. See Ingels, 42 F.3d at 621. When plaintiff was laid off, in addition to shifting her duties elsewhere, defendant retained a younger employee in a similar, half-time secretarial position in plaintiff's department. By showing that a younger employee was kept on in a similar position, plaintiff made her prima facie case. See Jones v. Unisys Corp., 54 F.3d 624, 630 & n.6 (10th Cir. 1995); see also Branson v. Price River Coal Co., 853 F.2d 768, 771 & n.6 (10th Cir. 1988).

4

We agree with the district court that plaintiff also established a prima facie case of retaliation for filing her EEOC complaint. A prima facie case of retaliation requires a showing that: (1) an employee engaged in a protected activity or participated in a Title VII proceeding, (2) she was subsequently disadvantaged by her employer, and (3) there is a causal nexus between the protected activity and the adverse employment action. See, Burrus v. United Tel. Co., 683 F.2d 339, 343 (10th Cir.), cert. denied, 459 U.S. 1071 (1982). Here, defendant fired plaintiff two months after she filed an EEOC charge, even though her supervisor previously had told her that she would only have her hours cut. Moreover, defendant changed its RIF policy shortly before plaintiff was terminated to downgrade seniority as a basis for making RIF decisions. This evidence was sufficient to establish plaintiff's prima facie case. See Marx, 76 F.3d at 329 (discussing close temporal proximity test).

The district court correctly found that plaintiff failed to make a prima facie case on her ADA claim, however. To make that showing she needed to establish that (1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of her job; and (3) defendant terminated her employment because of her disability. White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995). Plaintiff failed to provide any evidence that defendant terminated her employment because of her disability. Her assertion that other employees made disparaging remarks about worker's compensation

5

claimants is simply too attenuated to carry even the relatively light burden associated with a prima facie case.

We turn now to plaintiff's pendent state claim that defendant terminated her employment in retaliation for filing a worker's compensation claim. To establish a prima facie case, plaintiff was required to provide evidence that her institution of worker's compensation proceedings was a significant factor in defendant's decision to terminate her employment. Wilson v. Hess-Sweitzer & Brant, Inc., 864 P.2d 1279, 1284 (Okla. 1993). Plaintiff filed her claim in 1987, but was not discharged until 1993.[1] She alleges that defendant's employees made disparaging remarks about worker's compensation claimants, but she failed to show any pattern by defendant of threatening or firing such claimants, or any threats or references to termination specifically directed at her. We agree with the district court that under these circumstances, plaintiff failed to make a prima facie case of retaliation under Oklahoma law. See Thompson v. Medley Material Handling, Inc., 732 P.2d 461, 464 (Okla. 1987) (holding that timing alone did not establish prima facie case of retaliatory discharge).

---

[1] Plaintiff received an additional twenty percent permanent partial disability award in June 1992 and a four percent award in September 1993, shortly after she left defendant's employment. Appellant's App. at 90-92. The "institution of proceedings" resulting in retaliation is broader than the initial filing of a claim, see Buckner v. General Motors Corp., 760 P.2d 803, 808 (Okla. 1988), so these additional, later awards do have some significance to the retaliation analysis. However, even close temporal proximity, without more, does not make a prima facie case of retaliation, see Thompson, 732 P.2d at 464.

6

Only plaintiff's age discrimination and ADEA retaliation claims thus survive to the next stage of our analysis, at which the defendant must offer legitimate reasons for terminating plaintiff's employment. Defendant argues that its RIF was necessary, because it suffered significant operating losses due to changes in the hospital industry. These losses, defendant claims, required cost reductions, including employee layoffs, in order to keep the hospital profitable. In its response to the EEOC's request for information, defendant listed twelve employees laid off as a result of the RIF.

Plaintiff claims there was no RIF, only an attempt to create the appearance of one. Plaintiff asserts that defendant merely pulled together a list of the twelve employees who left during the relevant time period, and called this a RIF. Defendant, however, produced unrebutted evidence that the RIF was anticipated, discussed, and planned for because the hospital perceived a need to cut staffing. Plaintiff also questions the inclusion of some of the twelve employees on the EEOC report. She apparently contends that employees who were terminated for cause or voluntarily resigned cannot be included in the RIF. The real question, however, is whether these employees were replaced. Plaintiff presented no evidence to contradict defendant's assertion that they were not.

Plaintiff asserts that twelve employees out of 532 is too small to be a RIF. In response, defendant asserts that it actually reduced its workforce by a total of thirty-three full-time equivalents during the RIF. This figure is not exact, and contradicts other figures contained in the depositions of defendant's management and accountants. The only hard

figure in this record concerning the extent of reduction in force is the figure of twelve employees defendant supplied to the EEOC. This uncertainty does not create a genuine issue of material fact on the issue of pretext, however. Even if we assume that the RIF involved only twelve employees, this does not support plaintiff's conclusion that there was no RIF. "An employer need not dismiss any particular number of employees, or terminate a set percentage of the work force, to institute a reduction in force." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 845 (1st Cir. 1993)(three employees out of 212), cert. denied, 114 S. Ct. 1398 (1994); see also Roger v. Yellow Freight Sys., Inc., 21 F.3d 146, 151 (7th Cir. 1994)(rejecting claim that a reduction of 4.67% of the workforce is per se not a legitimate RIF).

Plaintiff also points out that defendant hired new employees during the RIF, but defendant explained that it had to continue hiring to fill essential positions. Plaintiff failed to show that she could have filled any of these positions (with the possible exception of the secretarial job in her former department, discussed below). Her complaint of continued hiring therefore does not establish pretext. See Furr v. Seagate Technology, Inc., 82 F.3d 980, 986 (10th Cir. 1996).

Plaintiff next argues that the RIF was unnecessary. She contends that while laying her off for an alleged lack of funds, defendant gave some of its employees a pay raise and continued with its building program. Defendant explains that these employees had not yet achieved their highest pay grade, that executive pay was slashed, and that the building

8

program was funded as a capital expenditure. The economic wisdom of a RIF lies within the realm of business decisions, and is not for a court and jury to decide. See id. Plaintiff's arguments about the wisdom of the RIF fail to demonstrate that it was pretextual.

Defendant justifies the specific application of the RIF to plaintiff on several grounds. It contends that due to economic conditions, it needed to eliminate one full-time equivalent position in plaintiff's department; that it targeted the position, not the employee; that plaintiff's job functions were the most easily transferrable in the department; that plaintiff could not do any other jobs within the department; and that its RIF rules did not allow it to displace less senior employees outside the department to preserve plaintiff's employment.

Plaintiff contends that she could have performed the other part-time secretarial job in the department that was held by a younger and less senior employee. Shortly after plaintiff's employment was terminated, this employee took a promotion and the job once again became open. Richard Amos, the Chief Human Resources Officer, explained that he did not offer this job to plaintiff[2] because he lacked confidence in her ability to consistently perform the job's payroll-related duties. He was concerned about her accuracy on the data key entry duties, given her previous performance with tasks involving accuracy on her own job. Plaintiff insists that she was capable of performing the functions of this job, but failed to

---

[2]     The evidence presented to the district court focused on defendant's decision not to offer the job to plaintiff after she was terminated, when the job came open again. The same reasons justify defendant's decision not to offer the position to plaintiff at the time her position was eliminated. Plaintiff does not present her claim as a failure to hire, and so we do not analyze it as such.

provide specific evidence to rebut Mr. Amos' assessment of her payroll-related abilities. Absent such proof, we view the manager's determinations, based on his perception of her performance, as a nonpretextual business decision. See Furr, 82 F.3d at 987-88.

We conclude that defendant has asserted legitimate reasons for the RIF, and for its decision to terminate plaintiff's employment. Plaintiff has failed to show that these reasons were pretextual. Therefore, the district court properly granted summary judgment against her.

Finally, we turn to plaintiff's claim that her termination based upon age violated Oklahoma public policy. Oklahoma recently has decided that it will not extend its narrow public policy exception to the at-will employment rule to age discrimination claims because the ADEA provides an adequate and exclusive remedy. See List v. Anchor Paint Mfg. Co., 910 P.2d 1011, 1014 (Okla. 1996).

AFFIRMED.

Entered for the Court

James K. Logan
Circuit Judge

10